FILED

2026 Mar-03  AM 10:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOSEPH HOLT** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NUMBER:** |
| | ) | |
| **CITY OF BIRMINGHAM,** | ) | **JURY DEMAND** |
| **ALABAMA, a municipal** | ) | |
| **corporation, and OFFICER** | ) | |
| **Christopher Jones, in his** | ) | |
| **individual capacity** | ) | |
| | ) | |
| **Defendants.** | | |

## <u>COMPLAINT</u>

COMES NOW, Plaintiff Joseph Holt ("Plaintiff" or "Mr. Holt"), by and through undersigned counsel, brings this civil rights action against Defendants City of Birmingham, Alabama ("City" or "Birmingham") and Christopher Jones pursuant to 42 U.S.C. § 1983 for violations of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution, and alleges as follows:

### <u>Parties, Jurisdiction, and Venue</u>

1.    Plaintiff Joseph Holt is an individual and resident of Birmingham, Jefferson County, Alabama. At all times relevant to this Complaint, Mr. Holt was the owner

1

of real property located 601 4th Avenue North, Birmingham, AL 35212 -- at the corner of 4th Avenue and 6th Street North, Birmingham, Alabama ("the Property").

2.      Defendant City of Birmingham is a municipal corporation organized and existing under the laws of the State of Alabama with its principal place of business in Jefferson County, Alabama. Birmingham is responsible for the operation, administration, and supervision of the Birmingham Police Department.

3.      Defendant Officer Christopher Jones is sued in his individual capacity. At all times relevant to this Complaint, Christopher Jones was a police officer employed by the Birmingham Police Department and acting under color of state law.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Jefferson County, Alabama, which is located within the Northern District of Alabama, Southern Division.

**Statement of Facts**

**Background**

6.      Mr. Holt is an African American business owner who purchased the Property with the intent to renovate it and open a licensed daycare facility to serve the Birmingham community.

2

7.     Mr. Holt has filed lawsuit(s) and/or claims for damages against the City of Birmingham before the occurrence of the events listed below and before February 2024 and the City was aware or had knowledge of the same at all times material.

8.     The Property is located in the Smithfield neighborhood of Birmingham, approximately two blocks from Firehouse Shelter, a homeless shelter operated by Firehouse Ministries. Beginning in or around February 2024 and continuing through November 2024 and to the present day, Mr. Holt's Property has been subjected to repeated and ongoing criminal trespassing, breaking and entering, burglary, theft, and vandalism.

9.     Over the course of approximately ten months, Mr. Holt has personally discovered individuals unlawfully inside his Property on more than fifteen (15) separate documented occasions, causing damage and stealing items including building materials, copper wiring, plumbing fixtures, electrical equipment, tools, and construction supplies.

10.     The repeated break-ins have resulted in extensive property damage, including but not limited to: multiple broken windows (estimated 12 windows at approximately $300 each); damaged and destroyed doors (4 doors at approximately $500 each); destroyed interior walls requiring drywall repair (approximately $3,500); removed plumbing fixtures (approximately $2,000); stolen copper wiring

3

and electrical components (approximately $4,500); and compromised structural elements necessary for the renovation (approximately $5,000 in additional repairs).

11.    As a direct result of these repeated criminal acts, Mr. Holt has been forced to board up all windows and doors on the Property at a cost of approximately $2,500 in materials and labor in an attempt to prevent further intrusions.

12.    Despite these security measures, the criminal activity has continued unabated, with perpetrators repeatedly defeating the barriers Mr. Holt has erected, resulting in additional costs of approximately $1,500 for replacement boarding materials.

13.    The ongoing criminal activity has prevented Mr. Holt from completing his renovation and opening his planned daycare business. Mr. Holt's projected renovation completion date was July 2024, with an anticipated opening date of August 2024. The daycare would have generated estimated monthly revenue of $8,000 based on market rates for licensed daycare facilities in Birmingham. As of the filing of this Complaint, Mr. Holt has lost over six months of business income, totaling approximately $48,000 in lost revenue.

14.    The total economic damages to Mr. Holt's property, including repairs, stolen materials, security measures, and lost business income, exceed $200,000.

**Birmingham Police Department's Pattern of Selective Non-Enforcement**

4

15.     Mr. Holt has contacted the Birmingham Police Department on more than fifteen (15) occasions between February 2024 and November 2024 to report break-ins, trespassing, theft, and vandalism occurring at his Property.

      a. In addition to making the reports related vandalism, theft, trespassing and burglary, Holt reported/requested updates for the actions and inactions of Christopher Jones to Birmingham Police Department/Internal affairs on July 3rd, July 15th, July 21st and December 10, 2025.

16.     On each of these occasions, Birmingham police officers, including Christopher Jones and other officers whose names are currently unknown but will be identified through discovery, responded to Mr. Holt's calls for assistance.

17.     On at least eight (8) occasions, responding officers, including Christopher Jones, arrived at the Property while perpetrators were still inside the building or immediately after they had fled, with clear evidence of forced entry, stolen property in hand or nearby, and ongoing criminal activity.

18.     On or about November 20, 2024, as documented in a WVTM 13 news report, Mr. Holt and news media personnel observed and recorded individuals actively using Mr. Holt's electrical power without permission to charge their phones, constituting theft of services and criminal trespass. Police were called but took no enforcement action.

19.     Despite catching perpetrators in the act of committing crimes, observing clear evidence of criminal activity including forced entry, property damage, and stolen items, and having probable cause to arrest for violations of Alabama Code § 13A-7-2 (criminal trespass in the first degree), § 13A-7-5 (burglary in the third degree), § 13A-7-21 (criminal mischief in the first degree), and § 13A-8-3 (theft of property), Christopher Jones and other Birmingham police officers repeatedly refused to arrest, cite, or charge the individuals responsible.

20.     Christopher Jones and other responding officers told Mr. Holt on multiple occasions that they would not arrest or charge the perpetrators for criminal trespass, breaking and entering, burglary, or theft unless Mr. Holt could provide receipts for the damaged doors, windows, and stolen property.

21.     This requirement that a property owner must produce receipts to prove ownership of fixed improvements to real property such as doors and windows has no basis in Alabama law. Specifically:

    a. Alabama Code § 13A-7-2 (criminal trespass in the first degree) requires only proof that a person knowingly entered or remained unlawfully in a building no receipts for doors or windows are required to establish the unlawful entry element;

6

b. Alabama Code § 13A-7-5 (burglary in the third degree) requires proof of unlawful entry with intent to commit a crime therein no receipts for damaged entry points are required;

c. Alabama Code § 13A-7-21 (criminal mischief in the first degree) requires proof of intentional damage to property of another ownership can be established by deed, title, or testimony, not receipts for fixtures that are part of the real property.

22.    The receipt requirement imposed by Christopher Jones has no foundation in Alabama criminal law or procedure and was a pretext for refusing to take enforcement action. This discriminatory motivation is evidenced by:

a. Christopher Jones's statements to Plaintiff that he was "tired of coming" to deal with these incidents at Plaintiff's Property;

b. Christopher Jones's statement that "[he] will kill [Joseph Holt] if he saw [Holt] again"

c. Christopher Jones's refusal to fully complete the incident report by listing the items lost, stolen, vandalized as a result of the reported criminal activity;

7

d. Christopher Jones's inconsistent application of the law requiring receipts for doors and windows only when dealing with crimes at Plaintiff's Property involving homeless perpetrators;

e. The pattern of non-enforcement by Birmingham police officers consistently correlating with the perpetrators' status as homeless or unhoused individuals associated with the nearby Firehouse Shelter;

f. The lack of any legitimate law enforcement justification for the different treatment of otherwise identical criminal conduct based solely on the socioeconomic status of the perpetrators.

23. Upon information and belief, Christopher Jones and other Birmingham police officers failed to take appropriate law enforcement action because the perpetrators were homeless individuals, many of whom were known to be associated with the nearby Firehouse Shelter.

**Disparate Treatment: Evidence of Selective Enforcement**

24. Upon information and belief, when other property owners in Birmingham, including those in the Smithfield neighborhood and surrounding areas, report similar crimes of breaking and entering, burglary, theft, and criminal trespass where the perpetrators are NOT homeless or unhoused individuals, Birmingham police officers routinely and consistently:

8

a. Arrest perpetrators caught in the act or shortly thereafter when probable cause exists;

b. Take complete police reports documenting the criminal activity and initiating investigations;

c. Collect and preserve evidence of the crimes;

d. Forward cases to the Jefferson County District Attorney's Office for prosecution;

e. Do NOT require property owners to produce receipts for doors, windows, and other fixtures that are inherent parts of real property in order to establish ownership or pursue criminal charges.

25. The Birmingham Police Department's disparate treatment of crimes based solely on the socioeconomic status of the perpetrators—providing full law enforcement services when perpetrators are housed individuals while refusing to enforce the same criminal statutes when perpetrators are homeless individuals— or when the victim like Mr. Holt has filed previous claims and/or lawsuits against the City --- constitutes selective enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment.

9

26.    There is no rational basis, much less a compelling governmental interest, for treating identical criminal conduct differently based solely on whether the perpetrator is homeless or housed.

27.    Mr. Holt is similarly situated to other property owners in Birmingham who are victims of property crimes. The only material difference in treatment is that the perpetrators of crimes against Mr. Holt's Property are homeless individuals, while perpetrators of crimes against other properties are not. Alternatively, the only material difference is that Mr. Holt has previously filed lawsuits and claims against the City.

28.    This pattern of selective non-enforcement has been consistent, predictable, and ongoing throughout the period from February 2024 to the present, demonstrating that it is not the result of isolated decisions by individual officers but rather a widespread custom or practice of the Birmingham Police Department.

### Causation and Increased Danger

29.    Had Christopher Jones and other Birmingham police officers arrested or cited individuals caught in the act of criminal trespass, burglary, theft, and vandalism at Plaintiff's Property as they were authorized and expected to do under Alabama law, the ongoing pattern of criminal activity would have been deterred and likely stopped because:

10

a. Arrest and prosecution serve as specific deterrence to those arrested, who would face consequences for their criminal conduct;

b. Word of law enforcement spreads through the community, including among the homeless population utilizing Firehouse Shelter, providing general deterrence to would-be perpetrators;

c. The cessation of impunity signals to potential perpetrators that criminal activity will have legal consequences, thereby discouraging future crimes;

d. Even a single arrest and prosecution would have demonstrated to the community that Plaintiff's Property was not an unprotected target where crimes could be committed without consequence.

30. Christopher Jones's repeated refusals to arrest perpetrators, combined with his express statements that he would "kill" Holt if he saw him again or that he was "tired of coming" to Plaintiff's Property and his imposition of pretextual barriers (the receipt requirement) to enforcement, sent a clear message to the criminal perpetrators and the broader homeless community that they could continue their criminal activities against Plaintiff's Property with complete impunity.

31. This affirmative conduct by Christopher Jones and other Birmingham police officers increased the danger to Plaintiff's Property and Person beyond what would

11

have existed absent police involvement, as the perpetrators were affirmatively emboldened by the certain knowledge that Birmingham police would not enforce criminal laws to protect Plaintiff or his Property.

32.    Christopher Jones's conduct directly facilitated and enabled the ongoing criminal activity against Mr. Holt's Property, causing continuing and escalating harm and damages that were foreseeable and preventable.

## Municipal Custom, Policy, and Practice

33.    The City of Birmingham, through its Police Department, has maintained a widespread and persistent custom of selective non-enforcement of criminal laws when perpetrators are homeless or unhoused individuals. This custom is so permanent and well-settled as to constitute a de facto policy with the force of law.

34.    This custom is evidenced by the following specific facts:

    a. Over a period of at least ten (10) months from February 2024 through November 2024 and continuing to the present, Birmingham police officers responded to more than fifteen (15) calls from Plaintiff regarding criminal activity at his Property and failed to make any arrests or issue any citations on every single occasion despite clear probable cause;

    b. Multiple different Birmingham police officers, including but not limited to Christopher Jones, exhibited the identical pattern of non-enforcement,

12

demonstrating that this is not the action of a single rogue officer but rather a department-wide custom;

c.  Upon information and belief, other property owners and business operators in the Smithfield neighborhood and in areas surrounding other homeless shelters in Birmingham have experienced similar patterns of police non-enforcement when reporting crimes committed by homeless individuals;

d.  This pattern has been consistent, predictable, and known to supervisory personnel within the Birmingham Police Department, yet it continues unchanged;

e.  The widespread nature of this custom is further evidenced by the fact that responding officers, including Christopher Jones, felt comfortable openly refusing to enforce the law and articulating pretextual reasons for non-enforcement, suggesting they believed such conduct was condoned or expected by the Department.

35.   The City of Birmingham has failed to adequately train its police officers regarding their constitutional obligation to provide equal protection of the laws to all persons regardless of the socioeconomic status of criminal offenders/regardless

13

of whether the victim has filed previous lawsuits or claims against the City. This failure to train amounts to deliberate indifference because:

a. The need for such training was obvious and well-known to the City in light of Birmingham's significant homeless population, the presence of multiple homeless shelters including Firehouse Shelter in proximity to business districts, and the foreseeable conflicts between property owners and homeless individuals;

b. The City was aware, or should have been aware through the exercise of reasonable diligence, of repeated incidents where its officers failed to enforce laws equally against homeless individuals, creating an obvious pattern that made the need for training glaringly apparent;

c. The City was aware, or should have been aware through the exercise of reasonable diligence, of repeated incidents where its officers failed to enforce laws equally for the benefit of Holt (due to ill will arising from Holt's other lawsuits filed against the City)

d. Despite this obvious need and actual or constructive knowledge of the pattern of violations, the City failed to implement any meaningful training regarding officers' obligation to enforce criminal laws equally regardless of the housing status of perpetrators;

e. The lack of training directly caused Christopher Jones's constitutional violations, as he lacked proper guidance, instruction, and accountability regarding his obligation to provide equal protection of the laws to all persons, including property owners victimized by crimes committed by homeless individuals.

36. The City of Birmingham has failed to adequately supervise and discipline its police officers who repeatedly fail to enforce criminal laws equally, demonstrating deliberate indifference to the rights of victims like Plaintiff.

37. Final policymakers for the City of Birmingham, including the Chief of Police and the Birmingham City Council, were notified of the pattern of selective non-enforcement and constitutional violations through:

a. Plaintiff's formal Notice of Claim submitted to the City in accordance with Alabama Code § 11-47-23, which provided detailed notice of the ongoing constitutional violations and damages suffered by Plaintiff;

b. Media coverage of the problem, including a WVTM 13 television news report broadcast on November 20, 2024, which documented the ongoing criminal activity at Plaintiff's Property and the police department's failure to take enforcement action;

c. Upon information and belief, complaints from other property owners and business operators in areas near homeless shelters regarding similar patterns of non-enforcement;

d. Internal police reports and CAD records documenting the repeated calls from Plaintiff's Property without corresponding arrests or enforcement actions, which were or should have been reviewed by supervisory personnel. (including at least the following dates July 3rd, 15th, 21st and December 10, 2025)

38. Despite this actual knowledge or constructive notice of the pattern of constitutional violations, City policymakers took no corrective action, implemented no new training, issued no policy directives, and disciplined no officers, thereby ratifying and perpetuating the unconstitutional custom and demonstrating deliberate indifference to Plaintiff's clearly established constitutional rights.

39. The City's customs, policies, practices, and failures to train, supervise, and discipline were the moving force behind and direct cause of the constitutional violations Plaintiff suffered at the hands of Christopher Jones and other Birmingham police officers.

**Damages and Continuing Harm**

40. As a direct and proximate result of Christopher Jones's selective enforcement and refusal to provide equal protection of the laws, and the City's customs, policies,

16

practices, and failures to train and supervise, Mr. Holt has suffered and continues to suffer substantial damages.

41.    Mr. Holt has incurred significant economic damages including:

   a. Property damage repairs totaling approximately $21,000, including window replacements ($3,600), door repairs and replacements ($2,000), wall and structural repairs ($3,500), plumbing fixture replacements ($2,000), electrical wiring and component replacement ($4,500), and miscellaneous repair costs ($5,400);

   b. Security measures totaling approximately $4,000, including initial boarding of all windows and doors ($2,500) and replacement boarding materials after continued break-ins ($1,500);

   c. Lost business income totaling over $48,000, representing six months of projected revenue from the planned daycare facility that Mr. Holt was unable to open due to the ongoing criminal activity and property damage;

   d. Diminution in property value due to the ongoing criminal activity, the inability to complete renovation, and the perception that the Property is an unprotected target for crime, estimated at no less than $35,000.

42.    Mr. Holt's total economic damages exceed $200,000 and continue to accrue as the criminal activity persists and the business opening is further delayed.

43.    Mr. Holt has suffered significant emotional distress, frustration, anxiety, and mental anguish as a result of:

    a. The ongoing victimization by repeated criminal activity against his Property;

    b. The Birmingham Police Department's refusal to provide him with equal protection under the law;

    c. The realization that he cannot rely on law enforcement to protect his constitutional rights or his property;

    d. The financial strain of continuous repairs and security measures with no end in sight;

    e. The loss of his dream and vision to open a daycare and serve his community.

44.    Mr. Holt has been deprived of his constitutional rights to equal protection under the law and due process, causing him ongoing harm that will continue unless this Court provides relief.

### Ongoing and Irreparable Harm

45.    The criminal activity at Plaintiff's Property continues to this day. As recently as December 2025/January 2026 Plaintiff discovered additional break-ins and property damage.

18

46.     Plaintiff continues to be denied equal protection of the laws when he reports these crimes to the Birmingham Police Department, as the pattern of selective non-enforcement persists unchanged.

47.     Without injunctive relief requiring the City to change its unconstitutional customs, policies, and practices, Plaintiff will continue to suffer irreparable harm that cannot be adequately remedied by money damages alone.

48.     Plaintiff's inability to rely on equal law enforcement protection constitutes a continuing violation of his fundamental constitutional rights, causing ongoing injury every day that the violations persist.

## Count I

### 42 U.S.C. § 1983 – Denial of Equal Protection Through Selective Enforcement (Against Christopher Jones in His Individual Capacity)

49.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 48 as if fully set forth herein.

50.     At all times relevant to this Complaint, Christopher Jones was acting under color of state law within the meaning of 42 U.S.C. § 1983.

51.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits state actors from treating similarly situated persons differently without a rational basis for such differential treatment.

19

52. Mr. Holt is similarly situated to other property owners in Birmingham who are victims of property crimes including burglary, criminal trespass, theft, and vandalism.

53. Christopher Jones, acting under color of state law, selectively enforced Alabama criminal laws by refusing to arrest, investigate, or take any law enforcement action against individuals who committed crimes against Mr. Holt's Property, while other similarly situated property owners received full law enforcement services when victimized by property crimes.

54. The sole basis for this differential treatment was the socioeconomic status of the perpetrators specifically, that the individuals who committed crimes against Mr. Holt's Property were homeless or unhoused persons, while perpetrators of crimes against other properties were not homeless.

55. Christopher Jones's selective non-enforcement of criminal laws based on the housing status of perpetrators has no rational basis and serves no legitimate governmental interest.

56. Christopher Jones's conduct demonstrates deliberate and intentional discrimination against Mr. Holt by denying him the equal protection of Alabama's criminal laws based solely on the identity and characteristics of those who victimized him.

20

57.    Christopher Jones's selective enforcement violated Mr. Holt's clearly established constitutional right to equal protection of the laws. It was clearly established at the time of Christopher Jones's conduct that:

    a.    The Equal Protection Clause prohibits government officials from treating similarly situated individuals differently without a rational basis. See *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing "class-of-one" equal protection claims where plaintiff alleges intentional differential treatment from similarly situated persons with no rational basis);

    b.    Selective enforcement of criminal laws based on illegitimate criteria violates equal protection.

    c.    Police officers may not refuse to enforce criminal laws based on the personal characteristics or status of perpetrators. See *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985) (governmental actions based on animus or illegitimate stereotypes violate equal protection).

58.    A reasonable officer in Christopher Jones's position would have understood that refusing to enforce criminal laws based solely on the perpetrators' status as homeless individuals, while enforcing those same laws when perpetrators were not homeless, violated Mr. Holt's clearly established constitutional right to equal protection of the laws.

21

59. Christopher Jones is not entitled to qualified immunity because his conduct violated clearly established constitutional rights of which a reasonable officer would have known. The right to be free from selective enforcement of criminal laws based on illegitimate criteria was clearly established at the time of Christopher Jones's conduct.

60. Christopher Jones's selective enforcement was intentional and deliberate, as evidenced by his repeated refusals to take enforcement action despite clear probable cause, his express statements of unwillingness to respond to calls at Plaintiff's Property, and his imposition of pretextual barriers (the receipt requirement) that have no basis in law.

61. As a direct and proximate result of Christopher Jones's selective enforcement and denial of equal protection, Mr. Holt has suffered the economic damages, emotional distress, and deprivation of constitutional rights described herein, and is entitled to compensatory and punitive damages.

## Count II

### 42 U.S.C. § 1983 – Municipal Liability for Violation of Equal Protection
### (Against City of Birmingham)

62. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 48 as if fully set forth herein.

22

63.    The City of Birmingham is liable under 42 U.S.C. § 1983 for the constitutional violations Mr. Holt suffered because those violations were caused by the City's customs, policies, practices, and failures to train and supervise its police officers.

64.    The City of Birmingham, through its Police Department, has maintained a widespread and persistent custom of selective non-enforcement of criminal laws when perpetrators are homeless or unhoused individuals. This custom is so permanent, well-settled, and widespread as to constitute a de facto municipal policy with the force of law.

65.    This unconstitutional custom is established by:

   a. The repeated, consistent pattern of non-enforcement by multiple Birmingham police officers over an extended period of time (at least ten months with fifteen documented incidents involving Plaintiff alone);

   b. The fact that different officers exhibited identical selective non-enforcement behavior, demonstrating a department-wide practice rather than isolated incidents;

   c. The predictability and consistency of the non-enforcement, which allowed perpetrators to rely on police inaction;

   d. The officers' comfort in openly refusing to enforce the law and articulating pretextual reasons, suggesting they believed such conduct was authorized or condoned by the Department;

23

e. Upon information and belief, similar patterns of non-enforcement affecting other property owners and businesses in areas near homeless shelters in Birmingham.

66. The City's unconstitutional custom, policy, or practice was the moving force behind and direct cause of the constitutional violations Mr. Holt suffered. See *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978) (municipalities liable under § 1983 only when policy or custom causes constitutional violation).

67. The City's customs, policies, and practices were the moving force behind and direct cause of Mr. Holt's constitutional injuries and have caused him to be deprived of his rights under the Equal Protection Clause of the Fourteenth Amendment.

68. As a direct and proximate result of the City's constitutional violations, Mr. Holt has suffered the economic damages, emotional distress, and deprivation of constitutional rights described herein, and is entitled to compensatory damages and injunctive relief.

## Count III

### 42 U.S.C. § 1983 – Failure to Train and/or Supervise
### (Against City of Birmingham)

24

69.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 48 as if fully set forth herein.

70.    The City of Birmingham is also liable based on its failure to adequately train its police officers regarding their constitutional obligation to provide equal protection of the laws to all persons regardless of the socioeconomic status of criminal offenders and/or regardless of the victim's history in filing lawsuits or claims against the City.

71.    The City's failure to train amounts to deliberate indifference to the constitutional rights of persons like Mr. Holt because:

   a.    The need for training on equal enforcement of laws was patently obvious given Birmingham's significant homeless population and the foreseeable interactions between police, property owners, and homeless individuals;

   b.    Policymakers knew or should have known of the pattern of selective non-enforcement but failed to implement training to address it;

   c.    The failure to train was the moving force behind Christopher Jones's violations, as proper training would have informed him of his constitutional obligation to enforce laws equally; *Gold v. City of Miami*, 151 F.3d 1346 (1998), *Hollis v. Miami-Dade Cty.*, 2021 U.S. Dist. LEXIS 36561 (2021).

25

    d.  The constitutional violation was a highly predictable consequence of the City's failure to train. See *City of Canton v. Harris*, 489 U.S. 378, 390 (1989);

72. The City of Birmingham is also liable based on its failure to adequately supervise and discipline its police officers who repeatedly engaged in selective non-enforcement, demonstrating deliberate indifference to the rights of victims like Plaintiff.

73. Final policymakers for the City, including the Chief of Police of the Birmingham Police Department and members of the Birmingham City Council, had actual or constructive knowledge of the pattern of selective non-enforcement through:

    a.  Plaintiff's formal Notice of Claim providing detailed notice of the constitutional violations;

    b.  Public media coverage of the problem;

    c.  Internal police reports and CAD records documenting repeated calls without enforcement action;

    d.  Upon information and belief, complaints from other affected property owners and community members.

74.    Despite this actual knowledge or constructive notice, City policymakers with final authority failed to take any corrective action, failed to implement training, failed to revise policies or practices, and failed to discipline officers, thereby ratifying the unconstitutional custom and demonstrating deliberate indifference to clearly established constitutional rights.

75.    The City's failures to train, supervise, and discipline were the moving force behind and direct cause of Mr. Holt's constitutional injuries and have caused him to be deprived of his rights under the Equal Protection Clause of the Fourteenth Amendment.

76.    As a direct and proximate result of the City's constitutional violations, Mr. Holt has suffered the economic damages, emotional distress, and deprivation of constitutional rights described herein, and is entitled to compensatory damages and injunctive relief.

## Prayer For Relief

WHEREFORE, Plaintiff Joseph Holt respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

A.    A declaratory judgment that Defendants violated Plaintiff's constitutional rights under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution;

27

B.    Compensatory damages against both Defendants, jointly and severally, in an amount to be determined at trial, including but not limited to:

    i.    Property damage and repair costs;

    ii.    Costs of security measures;

    iii.    Lost business income and future lost profits;

    iv.    Diminution in property value;

    v.    Emotional distress, mental anguish, and pain and suffering;

C.    Punitive damages against Christopher Jones in his individual capacity in an amount sufficient to punish his deliberate and intentional selective enforcement and denial of equal protection, and to deter similar misconduct in the future;

D.    Preliminary and permanent injunctive relief requiring Defendant City of Birmingham to:

    i.    Implement comprehensive training for all Birmingham Police Department officers regarding their constitutional obligation to provide equal protection of the laws to all persons regardless of the characteristics or status of criminal offenders;

    ii.    Implement policies and procedures to ensure equal enforcement of criminal laws and to prevent selective enforcement based on illegitimate criteria;

    iii.    Establish supervision and accountability mechanisms to identify and discipline officers who engage in selective enforcement;

    iv.    Report to this Court on compliance with the above requirements for a period of [three years] following entry of judgment;

E.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

F.    Pre-judgment and post-judgment interest as allowed by law;

G.    An order requiring Defendant City of Birmingham to produce all documents identifying officers who responded to calls at Plaintiff's Property during the relevant time period, including CAD records, police reports, incident reports, and body camera footage, to enable Plaintiff to identify Christopher Jones and any other officers who engaged in the unconstitutional conduct alleged herein;

H.    Leave to amend this Complaint to add the true name of Christopher Jones and any other John Doe defendants once their identities are ascertained through discovery;

I.    Such other and further relief as this Court deems just and proper.

Respectfully submitted this the 2nd day of March, 2026.

s/ Richard Rice

_____

Richard A. Rice (RIC 086)
ASB8387I66R
Attorney For Plaintiff

29

North 115 Richard Arrington Jr. Blvd. Birmingham, Al 35203
Telephone  205.618.8733
Facsimile    888.396.7193
Email        rrice@ricw-lawfirm.com

JURY DEMAND

## REQUEST FOR SERVICE BY CERTIFIED MAIL

**Please serve the Defendants at the address listed below.**

Christopher Jones
Attn: City Clerk
710 20th Street N,
Birmingham AL 35203


City of Birmingham
Attn: City Clerk
710 20th Street N,
Birmingham AL 35203